Filed 2/27/23  In re C.P. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re C.P., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. C.P., Defendant and Appellant. | E080072 (Super.Ct.No. J287547) OPINION |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Reversed and remanded with directions.

Gary S. Plavnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Tom Bunton, County Counsel, and Tiffany Lok, Deputy County Counsel, for Plaintiff and Respondent.

C.P. (mother) appeals from an order terminating parental rights to her toddler-age son, Ca.P. (sometimes child). She contends that Children and Family Services (CFS) failed to comply with the inquiry requirements of state statutes implementing the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq). We agree. Therefore, we will conditionally reverse; if, after a proper inquiry, the juvenile court finds that ICWA does not apply, it must reinstate the order terminating parental rights.

I

STATEMENT OF THE CASE

The mother is deaf and communicates via sign language. She grew up in foster care and in a group home. Apparently at some point, she was adopted (she mentioned having been abused by her "adoptive father").

In 2014, the mother gave birth to a daughter, R.P. In 2016, R.P. was detained and a dependency regarding her was filed. The juvenile court declared R.P. a dependent based on failure to protect. (Welf. & Inst. Code, § 300, subd. (b).)[1] In 2019, the mother's parental rights to R.P were terminated.

---

[1] This and all further statutory citations are to the Welfare and Institutions Code.

Social workers' reports in this case indicated that R.P. was removed based on "substantiated physical abuse and general neglect" under section 300, subdivisions (a) and (b). That is incorrect. The petition *alleged* both serious physical harm under subdivision (a) and failure to protect under subdivision (b). However, the juvenile court *dismissed* the serious physical harm allegation.

2

In November 2020, the mother gave birth to Ca.P. Later, she named two possible fathers; neither was ever located.

In December 2020, when the child was one month old, CFS received a report of neglect. Its investigation uncovered the prior dependency. A social worker interviewed the mother and her roommate; they both denied the reporting party's allegations.

When the social worker came back to observe the mother's interactions with the child, the mother became "defensive" and "uncooperative." She refused to let the social worker in. Although the reporting party's allegations had not been corroborated, CFS was concerned that it could not be sure the mother had remedied the issues that had led to the previous dependency. It therefore decided to file a dependency petition, but not to detain the child; it would leave the child with the mother, with family maintenance services.

The social worker came back again and gave the mother notice of the detention hearing. The mother became "polite and cooperative"; the social worker was able to observe her interactions with the child and saw nothing amiss.

However, after the petition was filed but before the detention hearing, the mother absconded with the child — first to Texas, and then to Illinois. The social worker had her phone number; when texted, the mother called back. Although resistant at first, eventually she agreed to come back for the next hearing.

In January 2021, the mother duly appeared for the jurisdictional/dispositional hearing. The child was detained and placed with a foster family. In March 2021, he was found to be deaf.[2]

Also in March 2021, at the continued jurisdictional/dispositional hearing, the juvenile court found jurisdiction based on failure to protect, failure to support (as to the absent father only), and abuse of a sibling. (§ 300, subds. (b), (g), (j).) It ordered reunification services.

The mother failed to participate in services. She missed visits for months at a time; when she did visit, "the quality of the visitation [was] limited as she struggle[d] with how to take care of the child." Some of her behavior was bizarre. CFS came to suspect that she had "untreated mental health issues."

In May 2022, at the 12-month review hearing, the juvenile court terminated reunification services and set a section 366.26 hearing.

In October 2022, at the section 366.26 hearing, the juvenile court found that the child was adoptable and that there was no applicable exception to termination. It therefore terminated parental rights.

---

[2] There were also concerns that he was developmentally delayed, but he improved after treatment.

## II

## INITIAL DUTY TO INQUIRE

A.    *Additional Factual and Procedural Background*.

In R.P.'s dependency, back in July 2016, the juvenile court found that ICWA did not apply.

In this dependency, the mother consistently denied any Indian ancestry. She filed a "Parental Notification of Indian Status" (ICWA-020) form stating that she had no Indian ancestry.

In December 2020, the social worker tried to identify the father "by asking relatives." It does not appear that she made any ICWA inquiry of those relatives.

In December 2020, on a form that asked for family contact information, the mother listed her mother, S.P.,[3] along with S.P.'s address in Loma Linda and her phone number.

The jurisdictional/dispositional report, filed in January 2021, included records from R.P.'s dependency. Those records included S.P.'s name and the name of the mother's grandmother, E.P. According to the report, CFS intended to "[c]ontinue [ICWA] inquiry with relatives." Contradictorily, however, the report also recommended that the juvenile court find that ICWA did not apply. Thus, in March 2021, the juvenile court so found.

---

[3]    S.P. also went by S.M.

In December 2021, a social worker asked the mother to identify the members of her support network. She named her mother, S.P., and her sisters, B.P. and A.P. The social worker commented, "It . . . appear[ed] that the mother gets frustrated when discussing her support network." The mother said her family was "dysfunctional. She then said she did not want to talk about it any longer. She does not feel that she can count on them or anyone to help her."

By May 2022, CFS had lost touch with the mother. It did a "due diligence" search for her, then obtained leave of court to serve notice on her through her counsel. As part of the search, it contacted S.P.'s address in Loma Linda. The current resident there denied knowing the mother.

As far as the record shows, CFS never contacted E.P., S.P., B.P., or A.P.

B.    *Applicable Legal Principles.*

Under ICWA and related federal and state law, "[a]n 'Indian child' is an unmarried person under 18 years of age who is (1) a member of a federally recognized Indian tribe or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. [Citations.]" (*In re Adrian L.* (2022) 86 Cal.App.5th 342, 349, fn. 9; accord, 25 U.S.C. § 1903(4), (8); 25 C.F.R. § 23.2; § 224.1, subds. (a), (b).)

"The court [and the] county welfare department . . . have an affirmative and continuing duty to inquire whether a child for whom a petition . . . has been filed[] is or may be an Indian child." (§ 224.2, subd. (a).) "'Th[is] continuing duty . . . "can be

divided into three phases:  the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice."' [Citations.]" (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 429.)

Initially, under federal law, the juvenile court "must ask each participant" in a dependency "at the commencement of the proceeding" "whether the participant knows or has reason to know that the child is an Indian child." (25 C.F.R. § 23.107(a) (2016).)  In addition, under state law, if the child is detained, the social services agency must "ask[] the child, parents, legal guardian, Indian custodian, *extended family members*, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child . . . ." (§ 224.2, subd. (b), italics added; see also *id.*, subd. (a).)

"Extended family member" is defined, as relevant here, as an adult "who is the Indian child's *grandparent, aunt* or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (§ 224.1, subd. (c), incorporating 25 U.S.C. § 1903(2), italics added.)

Next, "[i]f the court [or] social worker . . . has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child, the court [or] social worker . . . shall make further inquiry regarding the possible Indian status of the child." (§ 224.2, subd. (e).)  "[T]he requisite 'further inquiry' 'includes: (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs and State

Department of Social Services; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe.' [Citation.]" (*In re Austin J.* (2020) 47 Cal.App.5th 870, 883; see also § 224.2, subd. (e)(2).)

Finally, in a dependency that could result in a foster care placement or termination of parental rights, if "[t]here is reason to know a child involved in a proceeding is an Indian child," notice of the proceeding must be given to the relevant tribe or tribes. (25 U.S.C. § 1912(a); 25 C.F.R. §§ 23.11(a), 23.111; § 224.3, subd. (a); Cal. Rules of Court, rule 5.481(c)(1).)

The social services agency "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status . . . ." (Cal. Rules of Court, rule 5.481(a)(5).)

"If the court makes a finding that proper and adequate further inquiry and due diligence . . . have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings . . . ." (§ 224.2, subd. (i)(2).)

"A juvenile court's finding that ICWA does not apply implies 'that social workers had fulfilled their duty of inquiry.' [Citation.]" (*In re Dominick D.* (2022) 82 Cal.App.5th 560, 567.) "In the absence of any evidence the [agency] complied with its section 224.2, subdivision (b) duty to inquire of extended family members, [a] juvenile

8

court's finding that ICWA does not apply is error. [Citation.]" (*In re M.M.* (2022) 81 Cal.App.5th 61, 71, review granted Oct. 12, 2022, S276099.)

"[T]he parent's failure to object in the juvenile court to deficiencies in the investigation or noticing does not preclude the parent from raising the issue for the first time on appeal from an order entered at any hearing in which the juvenile court determined that ICWA was satisfied or does not apply [citations]." (*In re K.R.* (2018) 20 Cal.App.5th 701, 706.)

"Because ICWA imposes on the juvenile court a continuing duty to inquire whether the child is an Indian child, . . . the parent may a challenge a finding of ICWA's inapplicability in an appeal from [a] subsequent order, even if she did not raise such a challenge in an appeal from the initial order." (*In re Isaiah W.* (2016) 1 Cal.5th 1, 6.)

C.     *Application to These Facts*.

The record reveals the existence of the mother's mother S.P. and sisters B.P. and A.P.,[4] and it shows that CFS made no effort to contact them. Standing alone, this would appear to be a violation of the initial duty of inquiry.

CFS asserts that "[t]here is no need for further inquiry . . . where parents 'fail[] to provide any information requiring follow-up,'" citing our opinion in *In re S.B.* (2005) 130

---

[4]     Also, the record of R.P.'s dependency — which was filed in this dependency — reveals the existence of the mother's grandmother, E.P. She was not an "extended relative," within the meaning of section 224.1, subdivision (c); arguably, however, she was an "other[] who ha[s] an interest in the child" within the meaning of section 224.2, subdivision (b). We need not decide this question.

Cal.App.4th 1148 (*S.B.*). Here, however, we are dealing with the *initial* duty of inquiry, not the duty of *further* inquiry. In any event, when we decided *S.B.*, there was no initial duty to inquire of extended family members. (See Stats. 2018, ch. 833, § 5 [enacting section 224.2].) Now, "[r]egardless of a parent's response concerning his or her possible Indian ancestry . . . ," the agency has a duty to inquire of extended family members. (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 318.)

We accept that CFS is not required to do either the impossible or the futile. "The duty of inquiry under section 224.2, subdivision (b), is so broad that it will not be difficult for an appellant to find *some* deficiency to point to, but this does not necessarily translate into error by the juvenile court." (*In re K.H.* (2022) 84 Cal.App.5th 566, 605.) "[R]easonableness, viewed through the lens of ICWA's purpose, is the touchstone. The agency's inquiry must extend far enough to reasonably ensure that if there is information the child is or may be an Indian child, that information is gathered." (*Id.* at p. 604.)

Here, CFS failed to contact S.P. at a time when it had her address and telephone number. As CFS points out, months later, when it did belatedly contact that address, S.P. evidently did not live there any more. However, that does not establish that the phone number that it had for her was no longer valid. It also does not establish that, if it had asked the mother for S.P.'s current address, the mother would not have provided it. After all, she had willingly provided it before. Admittedly, the mother did not attend the 12-month review hearing, and thereafter CFS lost contact with her. However, it could have asked her counsel. Moreover, the mother did appear at the section 366.26 hearing.

10

CFS also failed to ask the mother for contact information for B.P. and A.P. CFS notes that, when it asked the mother about her support network, she named B.P., A.P., and S.P., but then she became upset and said "she did not want to talk about it any longer." She explained, however, that that was because she felt she could not count on them for support. The social worker concluded that she "gets frustrated when discussing her support network." We do not know — because CFS did not ask — whether the mother would have been willing to provide their contact information, especially if she were asked in the more neutral context of an ICWA inquiry.

The mother did refer, in passing, to her "adoptive father." However, it is not clear that she was ever actually adopted. She had been in foster care, and she may have used this term to refer to a foster father. Even assuming she was adopted, her adoptive relatives may have had information about whether her biological parents had any Indian ancestry.

CFS argues that the error was harmless because the mother denied any Indian ancestry and because the court in R.P.'s dependency found that ICWA did not apply.

When it comes to the harmless error standard for cases in which the agency has failed to make an adequate initial inquiry, appellate courts are all over the place. (See *In re K.H.*, *supra*, 84 Cal.App.5th at p. 608, and cases cited.) The issue is presently before our Supreme Court in *In re Dezi C.* (2022) 79 Cal.App.5th 769, rev. granted Sep. 21, 2022, S275578.

11

Until the Supreme Court speaks, stare decisis demands that we apply the standard most recently adopted by this court. Under this standard, "a court must reverse . . . where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744; accord, *In re D.B.* (2022) 87 Cal.App.5th 239, 245; *In re Ricky R.* (2022) 82 Cal.App.5th 671, 679; but see *In re K.T.* (2022) 76 Cal.App.5th 732, 742; *In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430-1431.)

Here, the record indicates that information from S.P., B.P., and A.P. was readily obtainable by asking the mother for their contact information. Even aside from whether the mother was a source, in December 2020, a social worker was in actual contact with unspecified "relatives." "In most circumstances, the information in the possession of extended relatives is likely to be meaningful in determining whether the child is an Indian child, regardless of whether the information ultimately shows the child is or is not an Indian child." (*In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 426.)

"The existence of parental denials of Indian ancestry . . . does not, standing alone, establish a lack of prejudice. We consider such denials along with the rest of the record . . . ." (*In re Adrian L.*, *supra*, 86 Cal.App.5th at p. 351.) That is especially true here, because the mother had been in foster care and may even have been adopted; thus, she may not have been aware of her own Indian ancestry, if any. (Cf. *ibid*. [parental denial tended to show harmlessness when "Mother and Father were close to their respective families."].)

Likewise, the fact that the juvenile court found that R.P. was not an Indian child fails to rebut the apparent prejudice. In 2016, when the juvenile court made that finding, there was no initial duty to inquire of extended family members.[5] Thus, once the mother denied Indian ancestry, CFS could — and most likely did — advise the juvenile court that ICWA did not apply to R.P. This fact, then, is nothing more than the mother's denial in a different guise.

We therefore conclude that CFS failed to carry out its initial duty of inquiry, the juvenile court erred by finding that ICWA did not apply, and the error was prejudicial. The appropriate appellate remedy is a conditional reversal, with directions to order CFS to carry out its duties. (E.g., *In re D.B.*, *supra*, 87 Cal.App.5th at p. 249.)

III

DISPOSITION

The order terminating parental rights is reversed, on the following conditions. On remand, the juvenile court must order CFS to carry out its duty of initial inquiry (§ 224.2, subd. (b)) and, if applicable, its duty of further inquiry (§ 224.2, subd. (e)) and its duty to provide notice to the pertinent tribes (25 U.S.C. § 1912(a); § 224.3). Once CFS has done so, the juvenile court must determine whether ICWA applies. If it determines that ICWA

---

[5]    The relevant law at the time was that "[i]f the court, social worker, or probation officer *knows or has reason to know that an Indian child is involved*, the social worker or probation officer is required to make further inquiry regarding the possible Indian status of the child . . . by interviewing the parents, Indian custodian, and extended family members . . . ." (Former § 224.3, Stats. 2006, ch. 838, § 32, italics added.)

does not apply, then it must reinstate the order terminating parental rights. If it determines that ICWA does apply, it must hold a new section 366.26 hearing in conformity with ICWA and related state law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

MILLER
J.

14